IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| PLAINTIFF, | Civil Action No. |
| v. | |
| $139,860 IN UNITED STATES CURRENCY, | |
| DEFENDANT. | |

## VERIFIED COMPLAINT FOR FORFEITURE

NOW COMES Plaintiff United States of America, by Ryan K. Buchanan, United States Attorney, and Sekret T. Sneed, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

## NATURE OF THE ACTION

1.    This is a civil forfeiture action against $139,860 in United States currency ("Defendant Currency") seized from Tajh Lamar Woolfolk by the U.S. Drug Enforcement Administration ("DEA") at the Hartsfield-Jackson Atlanta International Airport located at 6000 North Terminal Parkway, Atlanta, Georgia 30320, on or about July 14, 2023.

1

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

3.     This Court has in rem jurisdiction over the Defendant Currency pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district.

5.     The Defendant Currency is presently located in a secure account maintained by the United States Marshals Service.

## BASIS FOR FORFEITURE
### Relevant Statutes

6.     The Defendant Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or intended to be furnished in exchange for a controlled substance, constitutes proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of 21 U.S.C. § 841.

7.      The Defendant Currency also is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) on the grounds that it constitutes or was derived from proceeds traceable to a violation of a "specified unlawful activity."

8.      18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

9.      18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

## **Factual Background**

*Seizure of Defendant Currency*

10.     On or about July 14, 2023, at approximately 8:10 a.m., DEA Task Force Officers were conducting random interdiction stops on Delta Airlines Flight 898 to Los Angeles, California at Gate A6 at the Hartsfield-Jackson Atlanta International Airport.

11.     Task Force Officer ("TFO") Browder, who was standing at the wall observing the passengers in the gate area, noticed two men, who appeared to be traveling together, looking at him.  The two men appeared nervous.

12.     One of the men was carrying two bags: one gray and tan luxury designer duffle bag and one black rolling suitcase.

13.     After the two men appeared to separate, TFO Browder approached

the man with the two bags who was later identified as Tajh Lamar Woolfolk, showed him his DEA credentials and asked to speak with him.

14.    Woolfolk agreed to speak with TFO Browder.

15.    TFO Browder and Woolfolk walked to the gate area directly across from Gate A6.

16.    Unprompted, Woolfolk told TFO Browder that he had been previously stopped by someone else earlier in the airport that day and asked if that person had called TFO Browder.

17.    TFO Browder responded that he had not been contacted by anyone about encounters with Woolfolk.

18.    TFO Browder explained to Woolfolk that TFO Browder worked with a DEA group assigned to the airport that looked for people carrying illegal narcotics and large sums of cash, which was different than the function of the U.S. Transportation Security Administration, which checked people for bombs, explosives, guns and other dangerous contraband.

19.    TFO Browder asked Woolfolk if Woolfolk was carrying any illegal narcotics.

20.    Woolfolk became visibly irate and responded that he previously had answered these same questions when he had been stopped earlier and had even

4

showed that person his bank statements.

21.    Woolfolk refused to answer TFO Browder's question as to whether he was carrying any illegal narcotics.

22.    TFO Browder then asked Woolfolk if he was carrying a large amount of cash, meaning cash over $5,000.

23.    Woolfolk initially did not answer the question.

24.    TFO Browder asked Woolfolk if he had checked any luggage.

25.    Woolfolk responded that he had not checked any luggage.

26.    TFO Browder then requested consent to search Woolfolk's two bags.

27.    Woolfolk consented to the search of his two bags and signed a Consent to Search, DEA Form 88.

28.    During the search of the gray and tan duffle bag, DEA discovered various bundles of cash concealed within a zippered compartment, various articles of clothing and a tan and blue Christian Dior toiletry bag.  Below are true and accurate photographs of some of the bundled cash discovered in the gray and tan duffle bag at the time of the search.







29.    During the search of the black rolling suitcase, DEA discovered bundles of cash concealed within a pair of gray Adidas sneakers and various articles of clothing. Below are true and accurate photographs of some of the bundled cash discovered in the black rolling suitcase at the time of the search.





30.     Some of the discovered bundles of cash were banded together with rubber bands, which is consistent with the handling and packaging of cash associated with the sale of illegal narcotics.

31.     Woolfolk showed TFO Browder a North Carolina driver's license that reflected Woolfolk's full name and photograph.

32.     TFO Browder again asked Woolfolk how much cash he was carrying.

33.     Woolfolk responded that he was carrying at least $100,000.

34.     The subsequent official count of the total amount of cash seized from Woolfolk equaled $139,860, that is, the Defendant Currency, consisting of the following denominations:

    a) 645 $100

    b) 150 $50

    c) 3,317 $20

    d) 152 $10

35.     Below is a true and accurate photograph of the Defendant Currency at the time of the official count.



36.   TFO Browder informed Woolfolk that a drug detection dog would sniff the money for the presence of the odor of narcotics.

37.   TFO Browder then asked Woolfolk his purpose for traveling to Los Angeles.

38.   Woolfolk responded that he was traveling to Los Angeles for leisure, to undergo dental work and to look at jewelry.

39.   TFO Browder asked Woolfolk where he planned to stay while in Los Angeles.

40.     Woolfolk responded that he planned to stay with a friend in downtown Los Angeles.

41.     Upon further questioning, Woolfolk informed TFO Browder that he had purchased a one-way ticket to Los Angeles three days earlier on July 11, 2023 and that he planned to stay in Los Angeles for six days before returning to North Carolina.

42.     TFO Browder asked Woolfolk if Woolfolk was able to verify the source of the cash.

43.     Woolfolk responded that he was currently unemployed, but that he had sold his share of a nail salon known as Nail Tek, located in Apex, North Carolina, and had received $70,000.

44.     TFO Browder asked Woolfolk if his name was listed on any documentation that had been filed with the North Carolina Secretary of State as to Nail Tek in Apex, North Carolina.

45.     Woolfolk stated that it was.

46.     Woolfolk showed TFO Browder two of his purported bank accounts on a mobile banking application on his cell phone.

47.     TFO Browder observed that one account had a balance of $20,000 and one account had a balance of $784.  Neither account reflected recent withdrawals.

48.    DEA seized the Defendant Currency pending further investigation.

*Canine Officer Gives Positive Alert*

49.    Later that day, TFO Fikes and his certified Police Work Dog, "Bane," conducted an open air sniff test for the odor of illegal narcotics on the Defendant Currency.

50.    Banes gave a positive alert to the odor of illegal narcotics on the Defendant Currency.

*Further Investigation*

51.    DEA searched public sources as to Woolfolk's connection to a Nail Tek located in Apex, North Carolina.  No records were returned.

52.    Woolfolk's criminal history reflected the following drug-related convictions:

     a.    On May 21, 2015, Woolfolk was convicted of Felony Possession of Marijuana in the Superior Court for Guilford County, North Carolina.

     b.    On April 29, 2016, Woolfolk was convicted of Possession of a Controlled Substance with the Intent to Manufacture, Sell or Distribute in the Superior Court for Guilford County, North Carolina.

    c.    On February 9, 2023, Woolfolk was convicted of misdemeanor Possession of Marijuana in District Court for Guilford County, North Carolina.

*Administrative Proceedings*

53.    DEA initiated administrative forfeiture proceedings against the Defendant Currency.

54.    On August 31, 2023, Woolfolk, through his attorney Leslie M. Sammis, Esq., electronically filed an administrative claim to the Defendant Currency with DEA.

55.    The claim listed Woolfolk's address as 3900 Edgewood Terrace Drive, Greensboro, North Carolina 27406.

56.    The claim listed Ms. Sammis's address as Sammis Law Firm P.A., 1005 N. Marion Street, Tampa, Florida 33602-3404.

57.    Pursuant to 18 U.S.C. § 983(a)(3), DEA referred the matter to the U.S. Attorney's Office for the Northern District of Georgia for judicial forfeiture.

**FIRST CLAIM FOR FORFEITURE**
**21 U.S.C. § 881(a)(6)**

58.    The United States re-alleges and incorporates by reference Paragraphs 1 through 57 of this Verified Complaint for Forfeiture as if fully set forth herein.

13

59.    Based on the foregoing, the Defendant Currency is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6) on the grounds that it was furnished or was intended to be furnished in exchange for a controlled substance, that it constitutes proceeds traceable to such an exchange, or that it was used or was intended to be used to facilitate the possession of a controlled substance in violation of 21 U.S.C. § 841.

## SECOND CLAIM FOR FORFEITURE
## 18 U.S.C. § 981(a)(1)(C)

60.    The United States re-alleges and incorporates by reference Paragraphs 1 through 57 of this Verified Complaint for Forfeiture as if fully set forth herein.

61.    The Defendant Currency is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), because it constitutes or was derived from proceeds traceable to a specified unlawful activity, namely the illegal distribution of controlled substances.

## PRAYER FOR RELIEF

WHEREFORE, the United States prays:

(1)    that the Court forfeit the Defendant Currency to the United States of America;

(2)    that the Court award Plaintiff the costs of this action; and

(3)     that Plaintiff have such other and further relief as the Court deems

just and proper under the facts and circumstances of this case.

This 4th day of December 2023.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*
*600 U.S. Courthouse*
*75 Ted Turner Drive SW*
*Atlanta, GA 30303*
*(404) 581-6000   fax (404) 581-6181*

/s/SEKRET T. SNEED
*Assistant United States Attorney*
Georgia Bar No. 252939
sekret.sneed@usdoj.gov

15

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

        PLAINTIFF,

        *v.*

$139,860 IN UNITED STATES
CURRENCY,

        DEFENDANT.

Civil Action No.

## VERIFICATION OF COMPLAINT FOR FORFEITURE

I, Brian Everett, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This 1st day of December, 2023.

Brian Everett
Task Force Officer
U.S. Drug Enforcement Administration